**NEW STAR TRADING COMPANY, LTD., Appellant,**

**v.**

**AMERICAN SAMOA GOVERNMENT, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 09-02

July 28, 2004

Before WARD,[*] Acting Associate Justice, GOODWIN,[**] Acting Associate Justice, TASHIMA,[***] Acting Associate Justice, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Appellant, Marshall Ashley
For Appellee, Henry W. Kappel, Assistant Attorney General

---

[*] Honorable John L. Ward II, Judge, District Court of American Samoa, serving by designation of the Secretary of the Interior.
[**] Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.
[***] Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

OPINION

This case involves a dispute over the disposition of four locked containers of fabric (the "Fabric") and 92 sewing machines and related equipment (the "Sewing Machinery") that Daewoosa Samoa, Ltd. ("Daewoosa") left on land owned by the American Samoan Government ("ASG").

New Star Trading Co. ("New Star") contends that the Trial Division erred in concluding that ASG possessed a priority lien on the Fabric and the Sewing Machinery. Although our reasoning differs from that of the Trial Division, we affirm.

## Background

Daewoosa is an American Samoa corporation engaged in the business of manufacturing clothing. On January 1, 1997, Daewoosa entered into an agreement to lease real property from ASG (the "Lease"). The Lease was duly recorded in the Office of the Territorial Registrar. Thereafter, Daewoosa operated its manufacturing business on the leased premises.

New Star is a Korean corporation. On September 26, 1999, New Star entered into a contract with Daewoosa entitled "General Contract for Production" (the "General Contract"). Under the General Contract, New Star provided Daewoosa with fabric and the Sewing Machinery so that Daewoosa could manufacture clothing that New Star would sell to a buyer in the United States. The General Contract was not recorded with the Territorial Registrar.

Daewoosa encountered legal and financial problems and failed to pay its outstanding debts, including rent due under the Lease. In January 2000, New Star temporarily assumed management of Daewoosa's facility.

On August 24, 2000, New Star filed an action against Daewoosa for replevin, asserting that the Fabric and the Sewing Machinery located on the leased premises were delivered to Daewoosa under a consignment contract, rather than through a sale of goods.

On January 30, 2001, ASG terminated the Lease with Daewoosa because Daewoosa was $160,915.65 in arrears in its rental payments. The Trial Division appointed a Receiver for Daewoosa's assets. After the Trial Division consolidated New Star's claim with other cases against Daewoosa, New Star filed a Claim to Property asserting that it owned the Fabric and the Sewing Machinery.

Shortly thereafter, as part of the closing out of the receivership, ASG took control of the leased premises. On July 31, 2001, ASG was added as a necessary party to the consolidated actions against Daewoosa. ASG filed an inventory of the property located on the premises that did not mention the Fabric.

In October 2001, a trial was held concerning ASG's and New Star's competing claims for the Fabric and the Sewing Machinery. At trial, ASG supplemented the inventory list to include the Fabric and asserted ownership of the Fabric and the Sewing Machinery. The Trial Division held that: (1) New Star sold the Fabric and the Sewing Machinery to Daewoosa; (2) the Lease created a lien on the Fabric and the Sewing Machinery in favor of ASG; and (3) ASG's interest was superior to New Star's unrecorded interest in the property. New Star filed a timely Motion for Reconsideration, which was denied. It then appealed.

## Standard of Review

"A trial court's factual determinations are reviewed for 'clear error' and questions of law or mixed questions of law and fact are reviewed de novo." *Roman Catholic Diocese of Samoa Pago Pago v. Avegalio*, 20 A.S.R.2d 70, 73 (App. Div. 1992). Accordingly, we review the Trial Division's interpretation of contractual provisions *de novo*. The Trial Division's factual determinations, however, may be set aside under the "clearly erroneous" standard only "when the entire record produces the definite and firm conviction that the court below committed a mistake." *E.W. Truck & Equip. Co. v. Coulter*, 20 A.S.R.2d 88, 92 (App. Div. 1992). We must accord "particular weight to the trial judge's assessment of conflicting and ambiguous facts." *Id.*

## Discussion

### I. New Star's Interests in the Fabric and the Sewing Machinery

The two-page General Contract describes the basic agreement between New Star and Daewoosa relating to the Fabric and the Sewing Machinery. In a subsequent document, New Star wrote to Daewoosa: "We are pleased to confirm having sold to you the following goods: Commodity Industrial sewing machines . . . ninety-two sets" for an amount of $237,000. In a third document the parties agreed to a payment schedule for Daewoosa to refund $237,000 for payment of the sewing machines.

Daewoosa also executed a guarantee of $200,000 for the machines, and $150,000 for materials, plus interest, for a total guarantee of $420,000. Although the guarantee on the machinery was secured by real property owned by Kil-Soo Lee, the president and principal owner of Daewoosa,

29

that interest was subordinate to other liens on the property and New Star's attempt to enforce the guarantee was unsuccessful.

The specific issue to be resolved is whether the transfers of the Fabric and the Sewing Machinery from New Star to Daewoosa were consignments or the sale of goods.

A. The Fabrics

At trial, an employee of New Star, Young Ho Yoon, testified that under the General Contract, New Star provided Daewoosa the Fabric, Daewoosa would manufacture and ship the finished product, the buyer would pay New Star, and New Star would credit Daewoosa for the production work. Yoon testified that Daewoosa had no contact with the buyer. He called the arrangement "consignment processing production" or "consignment processing." On cross-examination, Yoon was asked whether New Star sold the Fabric to Daewoosa and he definitively responded, "No."

Despite Yoon's testimony, the Trial Division found that because the General Contract did not provide that Daewoosa could return unused fabric to New Star, the arrangement transferring the Fabric to Daewoosa was for the sale of goods. We conclude that this finding, that the parties contracted for a sale of the Fabric, is not clearly erroneous.

█ The arrangement between the parties bears little resemblance to a consignment of goods. At the essence of every consignment relationship is "a transaction in which a person delivers goods to [another] for the purpose of sale." BLACK'S LAW DICTIONARY 303 (7th ed. 1999). "The consignor, as principal[,] retains the ownership, may recall the goods, and sets the sale price and the consignee, as agent[,] receives a commission and not the profits of the sale." 77A C.J.S. *Sales* § 3 (2003). Here, New Star could not recall the Fabric, and Yoon's undisputed testimony was that Daewoosa had no contact with the buyer. Because Daewoosa was not selling the Fabric for New Star, the arrangement was not a consignment.

█ Rather, the General Contract was a sale of goods. "[I]n its broadest sense, the term 'sale' comprehends any transfer of personal property from one person to another for a valuable consideration." 77A C.J.S. *Sales* § 3 (2003). As the title of the General Contract states, this was, at its essence, a production contract. New Star provided raw material, Daewoosa processed the raw material into finished goods, and New Star sold the finished goods. When New Star provided Daewoosa with the Fabric, however, the transfer constituted a sale of goods: (1) because Daewoosa could not return the Fabric, title transferred to Daewoosa; and (2) Daewoosa's promise to manufacture finished goods and make them

available for sale to third parties amounted to "valuable consideration" for the Fabric. The Fabric was sold.

## B. The Sewing Machinery

■ We conclude that the parties' arrangement regarding the Sewing Machinery was also a sale of goods. The transaction for the Sewing Machinery did not involve a third party. Money was promised as consideration for the machines, the parties set up a payment schedule, and they described the transaction as a sale.

■ Although New Star did not specifically retain an interest in the Sewing Machinery as collateral, the language of the General Contract stated that New Star was to keep title in the machines until the debt was paid off. Under the common law, this language created a conditional sales contract:

> When a dealer in goods sells goods on credit, the dealer will often retain an interest in the goods sold as collateral to secure payment of the price. The retention of such an interest by the seller was formerly termed a "conditional sale," and in many jurisdictions the theory was that the seller retained title.

Eldon H. Reiley, *Security Interest in Personal Property* § 2:9 (2003).

■ Despite retaining a security interest in the Sewing Machinery, New Star did not record its interest. A.S.C.A. § 27.1510 provides that "No . . . conditional sales contract . . . is valid as to persons who do not have actual knowledge thereof unless" it is recorded with the Territorial Registrar.[1] A.S.C.A. § 27.1510(2). Under the statute, by failing to record its interest, New Star forfeits its security interest as to all third parties who do not have actual notice of its claim to the Sewing

---

[1] The full text of A.S.C.A. § 27.1510 provides:
No mortgage, bill of sale, conditional sales contract, deed of trust or conveyance of personal property which is not accompanied by a permanent delivery thereof to the vendee is valid as to persons who do not have actual knowledge thereof unless all of the following conditions are met:
    (1) it is in writing signed by the person to be bound and attested to by at least one witness;
    (2) it is filed with the Territorial Registrar within 10 days after its execution;
    (3) it truly states the consideration upon which it was based or the debt or liability which it was intended to secure, and contains a description of the specific article, articles, or land sold or mortgaged.

31

Machinery. *See Diocese of Samoa Pago Pago v. K.M.S.T. Inc.*, 18 A.S.R.2d 67, 70 (Land and Titles Div. 1991) ("actual knowledge should serve as a complete substitute for" constructive notice through recordation). Therefore, as to third parties that do not have actual notice of the conditional sales contract, New Star is like any other unsecured creditor that does not have a specific interest in the Sewing Machinery.[2]

## II. ASG's Interest in the Fabric and the Sewing Machinery

■ American Samoa follows the common law rule that "the landlord-tenant relationship [does] not give rise to a lien against the tenant's property." *Shantilal Bros., Ltd. v, K.M.S.T. Wholesale, Inc.,* 15 A.S.R.2d 115, 117 (Trial Div. 1990) ("*Shantilal*"). Nevertheless, ASG contends that it has a security interest in the Fabric and the Sewing Machinery arising from three Lease provisions: (1) a provision creating liens on personal property constructed or installed in or about the property; (2) a prohibition against mechanic's and material suppliers' liens; and (3) a provision permitting ASG to deem personal property abandoned if left on the premises after the lease is terminated.

### A. Liens on Personal Property

First, ASG contends that the Lease explicitly created a lien upon the Fabric and the Sewing Machinery:

14. SPECIAL OPERATING REQUIREMENTS

D. LESSOR has a lien upon LESSEE's personal property as it is constructed or installed in or about the premises for unpaid rent and for bills due to LESSOR which have arisen pursuant to LESSEE's use of the premises.

■ Under A.S.C.A. § 27.1510, a lease does not create a lien unless it "contains a description of the specific article, articles, or land . . . mortgaged." A.S.C.A. § 27.1510(3). Despite this statutory prohibition on "general mortgages," the Trial Division held that because the Lease specified the location of the leased property, the Lease's "all property" description was sufficiently specific to put potential creditors on inquiry notice of ASG's lien interest in the Fabric and the Sewing Machinery. This ruling was erroneous.

---

[2] New Star also argues that it has an equitable lien in the Sewing Machinery. However, because New Star did not raise this issue in its motion for new trial, it is waived on appeal. *See Kim v. Star-Kist Samoa, Inc.,* 8 A.S.R.2d 146, 149-50 (App. Div. 1988).

First, § 27.1510 invalidates mortgages that do not specifically identify the articles to be mortgaged. In *Shantilal Bros., Ltd. v. K.M.S.T. Wholesale, Inc.*, 16 A.S.R.2d 103 (Trial Div. 1990) (*"Shantilal II"*), *aff'd sub nom., Nelson & Robertson Pty., Ltd. v. Diocese of Pago Pago*, 21 A.S.R.2d 6 (App. Div. 1992), the court explained how the statute should be construed differently than the common law of general mortgages:

> The task before us, moreover, is not to determine what was the majority rule at common law with respect to general mortgages, or what the best judge-made rule would be. Rather, it is to enforce a particular statute. Our statute . . . requires not just that the mortgage contain some language sufficient to put third parties on inquiry, but that it contain a description of the "specific" article or articles mortgaged . . . . While [the mortgage's language] is arguably a "description" of sorts, it certainly does not contain a description of any "specific" article or articles, as our statute requires. Indeed, a reference to "all" of a general class of things would appear to be the very opposite of a "description" of a "specific" thing.

*Shantilal II*, 16 A.S.R.2d at 105.

Here, the Trial Division's reliance on the common law rule of how inquiry notice can affect general mortgages is precluded by § 27.1510. *See Nelson & Robertson*, 21 A.S.R.2d at 9 (agreeing that "the statute requires a description of every item covered"). Moreover, because the Lease does not contain a specific description of the Fabric or the Sewing Machinery, it does not create a lien on this property. Therefore, we conclude that the Lease did not explicitly create a lien on either the Fabric or the Sewing Machinery.

B. Mechanic's and Material Suppliers' Liens

Second, ASG asserts that the paragraph of the Lease which required Daewoosa to keep the premises free and clear of all liens, created a lien on the Fabric and the Sewing Machinery:

10. LIENS

A. LESSEE shall keep the leased premises free and clear from all mechanic's and material suppliers' and other liens for work or labor done, services performed, materials, appliances, or power contributed, used, or furnished or to be used in or about the leased premises for or in connection with any operations of LESSEE, or any alteration, improvement, repair, or addition that LESSEE may make or permit or cause to be made, or any

work or construction by, for, or permitted by LESSEE on or about the leased premises.

■ Here, there is no claim that New Star has a lien on the premises. Moreover, this Lease provision contains a prohibition *against* certain liens; it was error for the Trial Division to imply that it *creates* an affirmative lien in favor of ASG. The lien provision is simply irrelevant to the competing claims in the Fabric and the Sewing Machinery.

C. Abandonment of Premises

Finally, ASG contends that under the Lease, ASG can deem the Fabric and the Sewing Machinery abandoned and thus claim an interest in the property:

> 8. ABANDONMENT OF PREMISES
>
> LESSEE shall not vacate or abandon the premises at any time during the term of this lease agreement. If LESSEE abandons, vacates, or surrenders the demised premises, or is dispossessed by process of law, or otherwise, *any personal property belonging to LESSEE and left on the premises shall be deemed to be abandoned, at the option of LESSOR, except such property as may be encumbered to LESSOR.* Abandon shall include failure to conduct manufacturing business on the property.

(emphasis added).

It is not disputed that, under the terms of the Lease, Daewoosa abandoned the premises. Under the Lease, this abandonment gave ASG the option to deem Daewoosa's personal property abandoned.

> "Abandoned property" is that to which the owner has voluntarily relinquished all right, title, claim and possession, with the intention of terminating his ownership, but without vesting ownership in any other person, and with the intention of not reclaiming any future rights therein.

1 AM. JUR. 2D *Abandoned, Lost, and Unclaimed Property* § 1 (2004).

■ We conclude that the abandonment clause of the Lease permitted ASG to deem that Daewoosa had relinquished title to personal property left on the premises, and gave ASG an enforceable property interest in the Fabric and the Sewing Machinery. *See id.* § 16 ("Property which is abandoned becomes subject to appropriation by the first taker or finder who reduces it to possession.").

34

## III.  Priority Interest in the Sewing Machinery[3]

Ultimately, we must determine whether New Star or ASG has a priority interest in the Sewing Machinery.  New Star has a priority interest in the Sewing Machinery if ASG had actual notice of the conditional sales contract prior to deeming the Sewing Machinery abandoned.  On the other hand, if ASG lacked actual notice when it deemed the property abandoned, New Star's claim to the Sewing Machinery is subordinate to ASG's claim.

Arguably, abandonment of the Sewing Machinery occurred when ASG (1) terminated the Lease, (2) took control of the leased premises, or (3) filed an inventory with the court.  We do not resolve whether ASG deemed the property abandoned prior to, or after, receiving actual notice of the conditional sales contract.  The Trial Division definitively found that ASG "did not have . . . actual notice of New Star's interest," and that ASG's interest is superior to New Star's.  On appellate review we cannot say that the Trial Division's factual finding was "clearly erroneous," thus we affirm the finding that ASG did not have actual notice of the conditional sales contract when it deemed the Sewing Machinery abandoned.

Therefore, we conclude that ASG's lien on the Sewing Machinery has priority over New Star's unsecured claim.

### Conclusion

For the foregoing reasons, the judgment of the Trial Division is AFFIRMED.

―――――

---

[3] Because New Star had no unperfected security interest in the Fabric (because it was unconditionally sold to Daewoosa), this analysis applies only to the Sewing Machinery.